IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY
STATE OF MARYLAND

| | |
|---|---|
| VAN PAPADOPOULOS,<br><br>2008 Baltimore Road, #E42,<br>Rockville, Maryland 20851<br><br>Plaintiff,<br><br>v.<br><br>EAGLEBANK, a Maryland<br>chartered commercial bank,<br><br>7830 Old Georgetown Road,<br>Bethesda, Maryland 20814<br><br>Resident Agent:<br><br>CT Corporation<br>c/o EagleBank<br>351 West Camden<br>Baltimore, Maryland 21201<br><br>LISA PUNT, an Individual<br><br>11961 Tech Road<br>Silver Spring, Maryland, 20904<br><br>MARK DEITZ, an Individual<br><br>6010 Executive Boulevard, Suite 300<br>Rockville, Maryland 20852<br><br>STACY TALBOTT, an Individual<br><br>77 S Washington St #304<br>Rockville, Maryland 20850<br><br>THE LAW OFFICE OF STACY B.<br>TALBOTT, LLC, a Maryland Limited<br>Liability Corporation<br><br>77 S Washington St #304 | CASE NO.: _____ |

Case: 434042
NEW CASE
CV CLERK FEE-    80.00
MD LEGAL SERV    55.00
RIF-NEW CASE    30.00
TOTAL    165.00
Reet M001    Rcpt # 41740
BHM    HR    BIK # 1616
Jun 30, 2017    12:07 PM

EXHIBIT 1

Rockville, Maryland 20850

Resident Agent:

Thomas Talbott
77 S Washington St #304
Rockville, Maryland 20850

    Defendants.

Defendants.

## COMPLAINT AND REQUEST FOR JURY TRIAL

COMES NOW, Plaintiff, Van Papadopoulos, by and through undersigned counsel, and hereby brings this Complaint and Request for Jury Trial against Defendants EagleBank (the "Bank"), Lisa Punt, Mark Deitz, Stacy Talbott, and The Law Office of Stacy B. Talbott, and states as follows:

### Introduction

1. This is a wrongful discharge case in which the Bank, after receiving numerous threatening and intentionally false statements by Defendant Stacy Talbott, Esq. about Mr. Papadopoulos' conduct in a family law case, terminated his employment contract – not for any performance or work-related misconduct – but rather because the Bank did not like how Mr. Papadopoulos exercised his legal rights in his family law case pending before this Court. Ms. Talbott's intentionally wrongful interference into the amount of income garnished from Mr. Papadopoulos' wages, which resulted in a frivolous petition for contempt, led to the Bank's termination of Mr. Papadopoulos, and in doing so, the Bank violated strong public policy that protects an employee's assertion of his legal rights in civil and family actions, especially as it relates to placing limits on garnishment orders so that an employee is not faced with the untenable choice of filing for bankruptcy if an employer garnishes too much from wages. The Bank's termination of Mr. Papadopoulos also violated Montgomery County anti-discrimination law by terminating him because of his actions related to his marital status and family responsibilities. It is undisputed that the Bank cannot point to any workplace performance issue or poor conduct at it relates to Mr. Papadopoulos' duties as Vice President of Mortgage Services; instead, the Bank's reasons for his termination relate directly to his assertion of his legal rights,

2

which is conduct protected from wrongful discharge as a matter of public policy, and his marital status and family responsibilities in violation of County anti-discrimination law. As a result of Defendants' wrongful actions, Mr. Papadopoulos has suffered lost employment, significant financial harm, emotional distress, and injury.

## Jurisdiction and Venue

2. This Court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-102 and 6-103.

3. Venue is appropriate in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-201 and 6-202.

## Parties

4. Van Papadopoulos is an adult resident of Montgomery County, Maryland, residing at 2008 Baltimore Road, #E42, Rockville, Maryland 20851.

5. At all times relevant herein, EagleBank has been a Maryland chartered commercial bank with a principal office located at 7830 Old Georgetown Road, Bethesda, Maryland 20814.

6. At all times relevant herein, Mark Deitz was employed by Defendant EagleBank as a Senior Vice President and Area Sales Manager at the Bank's office located at 6010 Executive Boulevard, Suite 300, Rockville, Maryland, 20852.

7. At all times relevant herein, Lisa Punt was employed by Defendant EagleBank as Executive Vice President, Chief Human Resources Officer at the Bank's office located at 11916 Tech Road, Silver Spring, Maryland, 20904.

8. Stacy Talbott, Esq. is an adult resident of Maryland and an attorney licensed in Maryland conducting business as The Law Office of Stacy B. Talbott, Esq. with a principal address and office located at 77 S Washington St #304, Rockville, Maryland, 20850.

3

9. The Law Office of Stacy B. Talbott, Esq. is a law firm with a principal address located at 77 S Washington St #304, Rockville, Maryland, 20850.

## Factual Background

10. Mr. Papadopoulos was hired by the Bank as a Mortgage Loan Officer on or around April 21, 2014, and his employment was governed by a Mortgage Loan Officer Agreement ("MLO Agreement"). (Exhibit A)

11. Pursuant to the MLO Agreement, Mr. Papadopoulos was compensated based on a draw plus commissions. Therefore, Mr. Papadopoulos' monthly income fluctuated based on the number and amount of loans he closed per month and whether there were any outstanding draws that needed to be paid back to the Bank.

12. Mr. Papadopoulos was a highly successful employee, and was rewarded for his performance by the Bank with the additional title of Vice President of Mortgage Services on or around January 2017, although his duties as a Mortgage Loan Officer remained the same.

13. During his tenure at the Bank, Mr. Papadopoulos closed many loans, recruited other mortgage loan officers to the Bank, and his activities were very profitable to the Bank. He never received any negative performance reviews, discipline notices, or counseling memoranda. As a result of Mr. Papadopoulos' strong performance and profitability, his 2015 income reached approximately $370,000.00 and $267,000.00 in 2016.

14. Starting in 2015, Mr. Papadopoulos was involved in a contentious family law matter in this Court (Case No. 126203-FL) involving custody and support claims with his former spouse Lisa Hammond (f/k/a Papadopoulos), in which this Court entered an annulment of the marriage on or around August 24, 2016, due to Lisa Hammond's bigamy.

Ms. Hammond is represented by Defendants Ms. Stacy Talbott and The Law Office of Stacy B. Talbott in that family law matter.

15. As part of the family law matter, the Bank was responsible for withholding Mr. Papadopoulos' wages pursuant to an Earnings Withholding Order ("EWO") to pay spousal and child support. The most recent EWO relevant to this litigation was modified orally by the Judge on or around August 24, 2016, and formally memorialized in a written EWO on November 16, 2016. (See Exhibit B.)

16. Specifically, on or about August 24, 2016, Circuit Court Judge Maloney reduced Mr. Papadopoulos' support obligation to Lisa Hammond from $8,000 per month to $6,500.00 per month by order made orally.

17. Defendant Talbott intentionally delayed filing the EWO with the lower support amount by not agreeing to an Order stating that a maximum of 55% of Mr. Papadopoulos' disposable earnings could be withheld if his monthly income was insufficient to satisfy the $6,500.00 per month support obligation, thereby delaying for several months the reduction in Mr. Papadopoulos' support obligation from his wages and allowing several months of overpayment to be received by Lisa Hammond, causing Mr. Papadopoulos financial harm. From August 2016 through March 2017, Mr. Papadopoulos was forced to vigorously defend himself against aggressive legal tactics by Defendant Talbott and advocated zealously his position in this Court to protect his legal rights. Specifically, he advocated for language to be included in the EWO that made clear that a maximum of 55% of his disposable earnings could be withheld if his monthly income was insufficient to satisfy the $6,500.00 per month obligation.

18. Mr. Papadopoulos' position was supported by federal law, and the Bank's outside legal counsel. (See Exhibit C)

19. On or about November 1, 2016, Mr. Papadopoulos urged the Court to resolve the dispute about the withholding percentage so that an EWO could be finalized and the Bank could adjust the withholding to a maximum of $6,500.00, instead of the $8,000.00 amount that had been withheld in September and October, notwithstanding the Judge's oral order in August 2016.

20. At no time did Mr. Papadopoulos accuse the Bank of intentionally over-withholding from his income.

21. Ultimately, to get the reduced support amount memorialized in writing, Mr. Papadopoulos and Ms. Hammond agreed that the EWO could be written so that "up to 65%" of his income could be withheld, while at the same time limiting the withholding to 55% pursuant to the federal Consumer Credit Protection Act, U.S. Code, Title 15, Chapter 41, Sections 1673, *et seq*.

22. From December 2016 through February 2017, upon information and belief, there was no dispute about the amount withheld from Mr. Papadopoulos' wages.

23. But on or about March 1, 2017, Ms. Talbott falsely communicated to the Bank that it was legally required to withhold 65% of Mr. Papadopoulos' income, and further falsely stated that Mr. Papadopoulos had consented to that withholding amount.

24. In early March 2017, Lisa Punt, the Bank's Executive Vice President, Chief Human Resources Officer, asked Mr. Papadopoulos about the withholding amount, and he denied that he agreed to have the full 65% of his income withheld if he could not satisfy his $6,500.00 per month support obligation.

25. Mr. Papadopoulos continued to defend his position by arguing that federal law requires that only 55% of his income could be withheld under the EWO, which the Bank had previously agreed with through its own outside counsel in October 2016.

26. Throughout March 2017, Ms. Talbott continued to make false statements to the Bank and/or the Bank's outside counsel, Randi Hyatt, that Mr. Papadopoulos consented to that amount. Specifically, Ms. Talbott intentionally lied to the Bank when she stated that Mr. Papadopoulos' consent had been memorialized in a court hearing transcript. She later changed her story and intentionally falsely stated that Mr. Papadopoulos had consented in an e-mail. Neither statement is true; however, Ms. Talbott made such statements with the specific intent of pressuring the Bank to withhold the full 65% of his income, instead of the 55% as required by federal law and the EWO. When the Bank refused Ms. Talbott's request, she threatened the Bank with a frivolous petition for contempt.

27. Amidst Ms. Talbott's statements to pressure the Bank to withhold 65% of Mr. Papadopoulos' income, on March 14, 2017, Ms. Talbott inquired whether the Bank could further garnish Mr. Papadopoulos' wages to satisfy her judgment for attorneys' fees against Mr. Papadopoulos. After being told that the Bank could not withhold above the 25% maximum for garnishments, as opposed to withholding for support orders, Ms. Talbott commented: "Oh well, by then, with 10% interest, they should be a good retirement payment!"

28. On or about March 20, 2017, the Bank's outside counsel, Ms. Hyatt, explicitly told Ms. Talbott that the Bank had no legal basis for withholding 65%, and the e-mail communications with Mr. Papadopoulos made clear that he did not consent to a 65% withholding. Ms. Hyatt further stated to Ms. Talbott that her "inaccurate, yet adamant,

assertion that there was a transcript proving Van consented, coupled with threats of contempt against EagleBank, does little to encourage EagleBank's confidence in the manner you are proceeding, or its willingness to do more than is legally required. This is not EagleBank's battle to fight and we will not make it such."

29. Defendant Talbott's intentionally false statements that the full amount of 65% of Mr. Papadopoulos' income be withheld if he could not satisfy his $6,500.00 monthly support obligation resulted in a petition for contempt which was filed on March 20, 2017, against Mr. Papadopoulos and against the Bank.

30. On March 24, 2017, Mr. Papadopoulos and Ms. Hammond were scheduled to appear at a court hearing ("the March 24th hearing") to discuss an unrelated dispute, but the dispute was resolved between the parties on or about March 20, 2017.

31. Prior to the March 24th hearing, Ms. Talbott issued a subpoena *duces tecum* to the Bank requesting Mr. Papadopoulos' employment records; however, the subpoena became moot when the parties resolved their dispute and the subpoena should have been withdrawn.

32. On March 23, 2017, upon learning that Ms. Talbott failed to withdraw the subpoena to the Bank, Mr. Papadopoulos informed the Bank that he would file a Motion to Quash the subpoena *duces tecum* at the March 24th hearing because the issue was moot and the subpoena was irrelevant for the purposes of the hearing. The Bank, however, had already produced the requested records to Ms. Talbott.

33. Even though the original purpose of the March 24th hearing became moot when the parties resolved their dispute, the March 24th hearing proceeded in order for the Court to hear arguments regarding the appropriate withholding amount.

34. The Bank appeared at the March 24th hearing because it wanted guidance from the Court as to the proper percentage of withholding from Mr. Papadopoulos' wages. At the hearing, Mr. Papadopoulos and the Bank argued that a maximum 55% of his income could be withheld if his income was insufficient to satisfy the $6,500.00 support obligation, consistent with the federal Consumer Credit Protection Act and the language of the EWO. The Court agreed with Mr. Papadopoulos' position.

35. Acting on the Bank's express position that it wanted no part in the battle between Mr. Papadopoulos and Ms. Hammond, Mark Deitz, Senior Vice President and Area Sales Manager for the Bank prepared a memorandum recommending that Mr. Papadopoulos' employment be terminated. This memorandum recommending Mr. Papadopoulos' termination was signed and agreed to by Lisa Punt and Susan Riel, the Bank's Senior Executive Vice President, Chief Operating Officer. The grounds for the termination were because of his assertion of his legal rights in the related spousal and family legal proceeding and his efforts to protect his income from being over-withheld due to Ms. Talbott's incorrect and unlawful interpretation of the November 2016 EWO.

36. The facts set forth in Mr. Dietz's memorandum supporting the termination recommendation had been rejected by Ms. Hyatt a few days earlier when she stated that there was no support to the allegation that Mr. Papadopoulos consented to the 65% withholding amount, demonstrating that the reasons for the Bank's termination were false and pretextual.

37. On March 31, 2017, the Bank terminated Mr. Papadopoulos in a meeting with Mr. Dietz and Ms. Punt.

38. After his termination, Mr. Papadopoulos filed for unemployment, which was granted on May 3, 2017, based on the conclusion that the Bank provided insufficient

information to show that Mr. Papadopoulos' actions leading to his termination constituted misconduct in connection with his work.

39. Mr. Papadopoulos has been unable to obtain gainful employment in a similar position since his wrongful termination despite good faith efforts.

40. Ms. Talbott's intentional interference into Mr. Papadopoulos' garnishments led to his wrongful termination and has caused him significant financial and emotional harm. Not only has he been left without an income to support himself or his family, but he has been forced to drop health coverage for his dependents. He also has suffered emotional distress resulting in an inability to sleep, and has been prescribed medication due to the personal stress his termination has caused. Significantly, Mr. Papadopoulos has been unable to satisfy his support obligations and other debts, and may have to file for bankruptcy if he is unable to secure employment soon.

## **FIRST CAUSE OF ACTION**

### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### (Against EagleBank, Mark Deitz, and Lisa Punt)

41. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

42. The discharge of an employee for defending his legal rights that promote a strong public policy contravene that policy, and gives rise to a common-law action in tort.

43. 15 U.S.C. § 1673, *et seq.* embody a fundamental public policy that reflects a societal interest to protect the livelihood of a debtor and the debtor's family, and to prevent job loss, personal anguish, and humiliation.

44. 15 U.S.C. § 1673, *et seq.* prohibits courts from making, executing, or enforcing any order or process in violation of the federally mandated garnishment restrictions. Due to

Defendant Talbott's false statements and unlawful demands on Mr. Papadopoulos' employer to withhold 65%, Mr. Papadopoulos defended his legal right to ensure that his wages were not over-withheld and to prevent an unlawful order from being presented to the Court.

45. Defendants terminated Mr. Papadopoulos' employment in violation of this public policy after he attempted to resolve a delay in entering a new EWO order, involving Ms. Talbott, himself, and the Bank, which ultimately resulted in his income being over-withheld for approximately 2 1/2 months after this Court ruled on August 24, 2016 that Mr. Papadopoulos' support obligation was $6,500.00 per month, subject to the limitations set forth in 15 U.S.C. § 1673.

46. Lisa Punt used her influence and control to have Plaintiff wrongfully and abusively terminated because Mr. Papadopoulos defended his legal right to resolve the delay in entering a new EWO order and ensure that it was a lawful.

47. Mark Deitz acted on behalf of the Bank and recommended that the Bank terminate Plaintiff's employment.

48. Defendants' violation of Mr. Papadopoulos' legal rights is inconsistent and hostile to the public's interest in avoiding economic desperation and bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families.

49. Defendants acted intentionally, oppressively, and maliciously with an evil and malevolent motive to injure Mr. Papadopoulos. These acts, which resulted in Mr. Papadopoulos' wrongful discharge against public policy, were obnoxious, despicable, and ought not to be suffered by any member of the community.

50. As a direct, proximate, and foreseeable result of Defendants conduct, Mr. Papadopoulos has suffered harm in the form of economic, compensatory, and punitive damages in an amount to be determined according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

**(Against Stacy Talbott and The Law Office of Stacy B. Talbott, LLC)**

51. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

52. Mr. Papadopoulos and the Bank had a business/employment relationship that was memorialized in the MLO Agreement.

53. Stacy Talbott knew that Mr. Papadopoulos was employed by the Bank pursuant to his MLO Agreement.

54. At all times relevant to this dispute, Ms. Talbott was a member of and an agent of The Law Office of Stacy B. Talbott, LLC.

55. On more than one occasion on or about March 2017, Ms. Talbott engaged in wrongful conduct by making false and defamatory statements to the Bank and/or its outside counsel concerning whether Mr. Papadopoulos consented to a withholding amount of 65% from his income.

56. Ms. Talbott also engaged in wrongful conduct when she made a groundless threat to the Bank of contempt in bad faith and without a valid legal basis to do so, and then carried out that threat by filing a frivolous petition of contempt against Mr. Papadopoulos and the Bank, which improperly brought the Bank into the court process related to his family law matter.

57. Ms. Talbot knew or should have known that her legal position was false and improperly conveyed to the Bank.

58. Ms. Talbott's false statements and wrongful conduct were intended to improperly interfere with Mr. Papadopoulos' contractual and business expectancy with the Bank by attempting to have the Bank withhold more from Mr. Papadopoulos' wages than legally required by federal law and the EWO and by wrongfully inducing the Bank to terminate the MLO Agreement and his employment.

59. Ms. Talbott's false statements and frivolous legal arguments contributed to the Bank's decision to terminate its business relationship with Mr. Papadopoulos and the MLO Agreement.

60. Ms. Talbott's malicious, intentional, and false conduct caused Mr. Papadopoulos harm in the form of economic, compensatory, and punitive damages in an amount to be determined according to proof at the time of trial.

WHEREFORE, Mr. Papadopoulos demands judgment against the Defendants in an amount to be determined at trial, but at least in an amount that exceeds $75,000.00 in damages, plus interest and costs, as well as such other and further relief as the nature of the case may require and that this Honorable Court shall deem just and proper.

### Jury Demand

Mr. Papadopoulos demands a jury on all claims so triable.

Respectfully Submitted,

*[signature: Kara M. Maciel]*

Kara M. Maciel
Conn Maciel Carey LLP
5335 Wisconsin Ave, NW
Suite 660
Washington, D.C. 20015
E: kmaciel@connmaciel.com
T: (202) 909-2730

*Attorney for Van Papadopoulos*

## CERTIFICATION BY SIGNING ATTORNEY

I, Kara M. Maciel, certify on this 30th day of June, 2017, as provided by Rule 1-313 of the Maryland Rules, that I have been admitted to practice law in the State of Maryland since December 12, 2001.

*Kara M. Maciel*
Kara M. Maciel
Conn Maciel Carey LLP
5335 Wisconsin Ave, NW
Suite 660
Washington, D.C. 20015
E: kmaciel@connmaciel.com
T: (202) 909-2730

*Attorney for Van Papadopoulos*

2017 JUN 30 PM 12:09
FILED
CLERK OF COURT
CLERK'S OFFICE