IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

2017 DEC 21 P 2:02

VAN PAPADOPOULOS,

    Plaintiff,

v.

EAGLEBANK, *et al.*

    Defendants.

Case No.: GJH-17-2177

## MEMORANDUM OPINION

Plaintiff Van Papadopoulos brings this action against Defendants EagleBank and its employees, Mark Dietz and Liza Punt, (collectively, "EagleBank Defendants"), Stacy Talbott, and the Law Office of Stacy Talbott, LLC (collectively, "Talbott Defendants") alleging state common law and statutory claims following Plaintiff's termination from EagleBank. EagleBank Defendants removed the case to this Court on August 2, 2017. ECF No. 1. Now pending before the Court is Plaintiff's Motion for Remand, ECF No. 25, which includes a request for attorneys' fees. A hearing was conducted on November 1, 2017. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiff's Motion to Remand is granted, but Plaintiff's request for attorneys' fees is denied.

### I. BACKGROUND[1]

Plaintiff was an employee of EagleBank from April 2014 until March 31, 2017, when EagleBank terminated his employment. ECF No. 2 ¶ 10. Starting in 2015, Plaintiff became involved in a protracted family law matter in the Circuit Court for Montgomery County, and as a

---

[1] Facts relevant to this Motion are taken from the Complaint.

1

result of the family law matter, EagleBank, as Plaintiff's employer, was responsible for withholding a portion of Plaintiff's wages for spousal and child support payments. *Id.* ¶¶ 14–15. As the family law matter progressed, Plaintiff continued to litigate against his former spouse regarding the maximum dollar amount that EagleBank could withhold from Plaintiff's pay, with Plaintiff arguing that such payments were capped at 55% of his pay regardless of whether that payment was sufficient to satisfy his $6,500 per month support obligation. *Id.* ¶¶ 17, 34. Plaintiff's former spouse was represented by Talbott Defendants. During the course of the litigation, EagleBank received a subpoena *deuces tecum* from Talbot Defendants and had to appear at a March 24, 2017 hearing to obtain guidance from the Circuit Court as to the proper percentage to withhold from Plaintiff's wages. *Id.* ¶¶ 31, 34. Shortly after the March 24 hearing, EagleBank Defendants terminated Plaintiff. *Id.* ¶ 37. Plaintiff alleges that he was terminated because he asserted his legal rights in the ongoing family law matter in order to protect his income from excessive withholding. *Id.* ¶ 35.

Plaintiff commenced this action by filing a two-count Complaint in the Circuit Court for Montgomery County on June 30, 2017, bringing Maryland common law claims of wrongful discharge in violation of public policy against EagleBank Defendants (Count I) and tortious interference with economic relations against Talbott Defendants (Count II). ECF No. 2. In his wrongful discharge claim, Plaintiff alleged that EagleBank Defendants' decision to terminate him contravened the public policy embodied in Subchapter II of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. §§ 1671 *et seq.* ECF No. 2 ¶¶ 43–44. EagleBank Defendants, with consent from Talbott Defendants, removed the case to this Court on August 2, 2017, arguing that adjudication of Plaintiff's wrongful discharge claim turns on construction of the CCPA, thus

supporting federal question jurisdiction under 28 U.S.C. § 1331. ECF No. 1 ¶ 6–7. Plaintiff's Motion to Remand followed. ECF No. 25.[2]

## II. STANDARD OF REVIEW

Defendants removed this case pursuant to 28 U.S.C. § 1441(b), which provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." Therefore, removal is proper if the Court could have originally exercised federal question jurisdiction over Plaintiff's complaint. *See* 28 U.S.C. § 1331 (federal question jurisdiction exists over all civil actions that "arise under the Constitution, laws, or treaties of the United States"). The burden of establishing federal jurisdiction is placed on the party seeking removal, and all doubts are resolved in favor of remand. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

"In determining whether a plaintiff's claim arises under federal law, we apply the well-pleaded complaint rule, which holds that courts 'ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (citing *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir.1996)). If federal law creates Plaintiff's claim, then removal is proper. *Mulcahey*, 29 F.3d at 151. If federal law does not create Plaintiff's claim, there is only federal jurisdiction when Plaintiff's claim raises "a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

---
[2] Following removal, Plaintiff filed his First Amended Complaint, ECF No. 23, adding three additional Maryland statutory and common law claims (Counts III-V). However, the Court will only consider the original Complaint, ECF No. 2, to determine if removal is proper. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 443 (4th Cir. 2005). Regardless, as Plaintiff acknowledges, "the allegations set forth in Count I are identical in both complaints." ECF No. 27 at 4. As such, the Court will not consider Counts III-V for purposes of the instant motion.

responsibilities." *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 314 (2005). Thus, "a defendant seeking to remove a case in which state law creates the plaintiff's cause of action must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). While Federal courts may exercise federal question jurisdiction over state law claims that "turn on substantial questions of federal law" and require the "experience, solicitude, and hope of uniformity that a federal forum offers," *Grable* 545 U.S. at 312, this represents a "special and small category" of federal question jurisdiction. *Empire Healthchoice Assurance., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

## III. DISCUSSION

Plaintiff, in Count I of his Complaint, alleges that EagleBank Defendants wrongfully discharged him against public policy embodied by the CCPA. While Plaintiff does not bring a claim under the CCPA itself, this federal statute is the sole source of public policy supporting his wrongful discharge claim. ECF No. 25-1 at 2–3.[3] Thus, Defendants argue that Plaintiff's wrongful discharge claim depends on questions of federal law that are substantial, including whether the CCPA provides a private right of action, which would bar Plaintiff's wrongful discharge claim under Maryland common law, and whether the CCPA sets forth a sufficiently clear mandate of public policy related to Plaintiff's discharge. ECF No. 26 at 5–6. Therefore, the Court must determine whether Plaintiff's wrongful discharge claim implicates "a federal issue, actually disputed and substantial." *Grable*, 545 U.S. at 314.

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

4

### A. Private Right of Action in CCPA

To state a claim for wrongful discharge in violation of public policy under Maryland law, Plaintiff must show that he was discharged, that the basis for his discharge violated a clear mandate of public policy, and that there is a nexus between his conduct and EagleBank's decision to discharge him. *Verbal v. Giant of Md., LLC*, 204 F. Supp. 3d 837, 843 (D. Md. 2016) (citing *Wholey v. Sears Roebuck*, 370 Md. 38, 50–51 (2002)). However, "because the purpose of the tort is to 'provide a remedy for *otherwise unremedied* violations of public policy,' the tort is not viable if the statutes that establish the public policy at issue 'already provide an adequate and appropriate civil remedy for the wrongful discharge.'" *Perry v. Dillon's Bus Service, Inc.*, No. ELH-16-3207, 2017 WL 2537011, at *11 (D. Md. June 9, 2017) (citing *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 423 (2003)) (emphasis in *Perry*). Thus, as an initial matter, the viability of Plaintiff's wrongful discharge claim depends on whether the CCPA provides a private right of action.[4] If it does, Plaintiff's claim for wrongful discharge cannot survive. It would appear on the surface, therefore, that Plaintiff's right to relief depends on a question of federal law.

But the Court must still determine whether the issue is substantial. As a starting point, a review of the CCPA itself indicates that while enforcement of the statute's provisions is to be made by the Secretary of Labor, 15 U.S.C. § 1676, there is no express provision providing a private right of action. Additionally, a number of courts have considered the issue and a clear majority have determined that the CCPA does not provide a private right of action.

---

[4] Plaintiff maintains that the Court need not interpret or construe the CCPA at all because Plaintiff does not allege that Defendants actually violated the CCPA. The Court disagrees. Because Plaintiff may not bring a wrongful discharge claim if he can obtain relief under the CCPA, the Court must consider whether a CCPA claim is viable, necessitating construction of the restrictions on garnishment in 15 U.S.C. § 1673 or restriction on discharge from employment by reason of garnishment in § 1674(a). *See Franchise Tax Bd. v. Const. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983) ("[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint[.]") (citation omitted).

5

For example, in *Western v. Hodgson*, the United States District Court for the Southern District of West Virginia determined that a private right of action for violations of § 1673 was "neither provided for nor contemplated by Congress in enacting [the CCPA]" and dismissed the plaintiffs' suit. 359 F. Supp. 194, 201 (S.D. W.V. 1973). On review, the Fourth Circuit upheld the dismissal because the plaintiffs did not present facts showing that they were entitled to relief under the CCPA, but "refrain[ed] from either reaching the question or expressing any view as to whether a private action may be maintained under the wage garnishment provisions of the [CCPA]." 494 F.3d 379, 380 (4th Cir. 1974). Although the Fourth Circuit has not resolved the issue, a review of other circuits reveals a consensus that no such private cause of action exists. *See LeVick v. Skaggs Companies, Inc.*, 701 F.2d 777, 779 (9th Cir. 1983) ("[u]pon examination of Subchapter II of the [CCPA], of which § 1674 is a part, we are unable to find any manifestation of congressional intent to provide a private right of action under § 1674(a). Indeed, what evidence there is suggests that Congress intended such a right not to be available.")[5]; *McCabe v. City of Eureka, Mo.*, 664 F.2d 680, 683 (8th Cir. 1981) ("we refuse to imply a private right of action under 15 U.S.C. § 1674(a)"); *Smith v. Cotton Bros. Baking Co. Inc.*, 609 F.2d 738, 741–42 (5th Cir. 1980) (relying on *Cort v. Ash*, 422 U.S. 66, 95 (1975)) (a cursory examination of the first three [*Cort* factors for determining an implied private right of action] . . . leads us to conclude that no private remedy is implied under Subchapter II of [the CCPA]"); *see also Pressman v. Neubardt*, No. 02 Civ. 8404(RCC), 2002 WL 31780183, at *2 (S.D.N.Y. 2002)

---

[5] In *LeVick*, the Ninth Circuit revisited its earlier determination in *Stewart v. Travelers Corp.*, 503 F.2d 108 (9th Cir. 1974), which "reasoned that the implication of civil remedies under the CCPA was necessary to ensure 'the full effectiveness of the congressional purpose' of the statute." *LeVick*, 701 F.2d at 778 (citing *Stewart*, 503 F.2d at 114). Following *Stewart*, the Supreme Court set forth a new standard for determining whether a private right of action is to be implied under a federal statute, requiring courts to focus on whether Congress intended to create a private right of action, regardless of its purpose in enacting the statute. *LeVick*, 701 F.2d at 779 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). Finding that the analysis upon which *Stewart* rested had been rejected by the Supreme Court, the *LeVick* court declined to follow *Stewart* and held that no private cause of action exists under the CCPA. *LeVick*, 701 F.2d at 780.

("pursuant to the express language of 28 U.S.C. § 1676 and case law rejecting the notion of an implied private right of action under 28 U.S.C. § 1673, this Court finds that it lacks subject matter jurisdiction"); *Stouch v. Williamson Hospitality Corp.*, 22 F. Supp. 2d 431, 433 (E.D. Pa. 1998) ("Given the mechanism provided by Congress for enforcement of this statute in § 1676 and the persuasive reasoning of *Smith* and *LeVick* . . . I conclude that there is no private cause of action under 15 U.S.C. § 1674."). *But see Ellis v. Glover & Gardner Construction Co.*, 562 F.Supp. 1054 (M.D. Tenn. 1983) (finding that a private right of action exists under the CCPA).

Given the lack of any mention of a private right of action in the text of the statute and the fact that the statute contemplates enforcement by the Secretary of Labor, this Court finds the majority view persuasive and agrees that there is no private right of action in the CCPA. The Court additionally finds that "the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[6] *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 (1986).

### B. Public Policy Created by CCPA

Defendant also argues that Plaintiff's reference to the public policy of the CCPA as the foundation for his wrongful discharge claim provides a basis for federal question jurisdiction, but the mere mention of the federal statute does not automatically implicate a substantial issue of

---

[6] Although the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308 (2005) placed limits on the broad language of *Merrell Dow* by noting that the absence of a federal private right of action is "evidence relevant to, but not dispositive of" congressional intent regarding jurisdiction, *Grable* presented a very different set of circumstances. As the Supreme Court later noted "the dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the questions qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assurance, Inc., v. McVeigh*, 547 U.S. 677, 700 (2006). Similar factors do not exist here and, thus, the lack of a private remedy for CCPA merits in favor of remand. *See Varco v. Tyco Electronics Corp.*, No. RDB 08-1215, 2009 WL 728571, at *5 (D. Md. Mar. 16, 2009) (finding the "unique circumstances presented in *Grable*" to be absent and remanding state wrongful discharge case based on a federal statute that did not contain a private right of action).

federal law. *See Empire Healthchoice*, 547 U.S. at 701 ("it takes more than a federal element to open the arising under door") (internal citation omitted). The public policy created by the CCPA at issue here is easily discernable from the statute itself and does not present a substantial issue. *See* § 1671(a)(2) ("The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce."). Moreover, the Supreme Court has already evaluated the legislative history of the CCPA, noting that the CCPA sought to mitigate the disruption of employment due to the "causal connection between harsh garnishment laws and high levels of personal bankruptcies." *Kokoszka v. Belford*, 417 U.S. 642, 650–51 (1974) (citing H.R. Rep. No. 1040, 90th Cong., 1st Sess., 21 (1967)). As such, there is little need to have a federal court apply such policy considerations to Plaintiff's wrongful discharge claim. The issue at hand is not to determine the contours of public policy underlying the CCPA; rather, the issue is "whether, under *state law*, the statute is sufficiently clear to support the public policy prong of a common law wrongful discharge claim, and, if so, whether the evidence indicates that [Defendants'] decision to terminate Plaintiff was linked to conduct covered by the public policy." *See Varco v. Tyco Electronics Corp.*, No. RDB 08-1215, 2009 WL 728571, at *4–5 (D. Md. Mar. 16, 2009) (finding that the public policy considerations of a federal statute "lacks any additional significance other than being a necessary and disputed element in Plaintiff's state law wrongful discharge claim"). This is a situation-specific inquiry, tangentially related to a federal statute that itself does not provide Plaintiff with a private cause of action and lacks "pure issues of law," the adjudication of which would establish a rule applicable in future CCPA actions. *See Empire Healthchoice*, 547 U.S. at 681 (distinguishing *Grable*, 545 U.S. 308).

Finding that Plaintiff's wrongful discharge claim does not present any substantial issues of federal law, the Court also notes that the balance of federal and state judicial responsibilities weighs in favor of remand. *See Grable*, 545 U.S. at 314. ("Because [28 U.S.C. § 1331] jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive"). While federal legislation has provided aggrieved employees with the opportunity to obtain relief in federal court under specific circumstances, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, "a [w]rongful discharge claim, regardless of the federal policy at issue, is fundamentally a state common law cause of action," and the federal-state balance would be "drastically upset if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy." *Varco*, 2009 WL 728571, at *6–7 (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544 (6th Cir.2006)). As such, the Court does not have jurisdiction over Plaintiff's claim and must remand the matter to state court.[7]

### C. Attorneys' Fees

Finally, Plaintiff asserts that Defendants lacked an objectively reasonable basis for seeking removal, and the Court should therefore award Plaintiff attorneys' fees pursuant to 28 U.S.C. § 1447(c). ECF No. 25-1 at 10 (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132,

---

[7] EagleBank Defendants cite *Parlato v. Abbot Labs.*, 850 F.2d 203 (4th Cir. 1988) as "binding precedent" that allows removal of wrongful discharge claims based on violations of federal public policy, ECF No. 26 at 4, but EagleBank Defendants either misinterpret or misrepresent that case. In *Parlato*, the Fourth Circuit initially noted that the wrongful discharge suit was properly removed to federal court under diversity jurisdiction. 850 F.2d at n.3. Moreover, the Fourth Circuit's assessment on the viability of a wrongful discharge claim was limited to claims that were based upon the public policy of state and/or federal statutes that themselves create "a specific procedure and remedy for the redress of the alleged wrongs." *Id.* at 205 (construing *Makovi v. Sherwin-Williams Co.*, 75 Md. App. 58 (1988)). Because the CCPA does not create an exclusive remedy for Plaintiff's alleged wrongs, *Parlato* does not apply.

141 (2005)). However, the absence of federal question jurisdiction here was not obvious—Plaintiff's claim rests on public policy created solely by a federal statute, and there is no clear Fourth Circuit or Supreme Court precedent indicating that Plaintiff cannot obtain relief under the CCPA in lieu of his wrongful discharge claim. Thus, attorneys' fees are not appropriate.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand, ECF No. 25, is granted, and Plaintiff's request for attorneys' fees is denied. A separate Order follows.

Dated: December 21, 2017

GEORGE J. HAZEL
United States District Judge